IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

FILED

OCT 28 2011

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY _____ DEPUTY

1) MADAME HABYARIMANA,                )
in her own capacity and on behalf of the    )
estate of the deceased President of Rwanda, )
JUVÉNAL HABYARIMANA;               )
                                                              )
2) MADAME NTARYAMIRA;                 )
in her own capacity and on behalf of the    )
estate of the deceased President of Burundi, )
CYPRIEN NTARYAMIRA;                  )
                                                              )
                              Plaintiffs,              )
                                                              )
v.                                                            )    Case No. CIV-10-437-W
                                                              )
1) PAUL KAGAME, President of the     )
Republic of Rwanda.                           )
                                                              )
                              Defendant.            )

## ORDER

On June 23, 2011, the Court entered its order ruling, among other things, that the plaintiffs had failed to establish that they had effected service upon defendant Paul Kagame, President of the Republic of Rwanda. The Court carefully examined the plaintiffs' factual assertions regarding their attempt to serve President Kagame in person while he was on the premises of Oklahoma Christian University. Even accepting, for the sake of argument, the plaintiffs' various hearsay assertions that they delivered a copy of the summons and complaint to a "Secret Service Agent" who then delivered the documents to members of President Kagame's staff, the Court concluded that the plaintiffs failed to meet the requirements of either Federal Rule 4(e)(2) or 4(e)(4) because they failed to establish that they delivered a copy of the complaint to President Kagame or to his "authorized agent."[1] The Court spent considerable time dissecting the plaintiffs'

_____

[1]In their motion for reconsideration (docket entry no. 48), the plaintiffs assert that the Court failed to consider whether service complied with Rule 4(2)(A) of the Federal Rules of Civil Procedure. A cursory

argument that their service attempt should be considered effective under Rule 4(e)(1) which requires "compliance with a method of service prescribed by the law of the state where the district court is located." The Court's particular focus on Oklahoma's service requirements was prompted by the plaintiffs' contention that Oklahoma's requirements were less rigorous than those of the Federal Rules because the state mandates only "substantial compliance" with its service provisions. After examining the controlling Oklahoma authorities and comparing them to the plaintiffs' allegations regarding their service attempt, the Court concluded that, even under Oklahoma's arguably more lenient standards, the plaintiffs had failed to establish service of President Kagame.

Despite the plaintiffs' failure to effect service under the provisions of either the Federal Rules or the Oklahoma Pleading Code, the Court found good cause for the failure and, pursuant to Rule 4(m), extended an additional 120 days in which to serve President Kagame. At the same time, the Court noted that such service efforts would prove futile if, as President Kagame asserts, he is immune from suit.

President Kagame argues that as a head of state recognized by the United States government, he is absolutely immune from suit. In addition, he argues that he is entitled to diplomatic immunity, and that the plaintiffs' case, because it implicates matters of national security and international diplomacy, ultimately raises issues reserved for resolution by the Executive Branch. President Kagame informed the Court that the government of the Republic of Rwanda had transmitted to the United States Government a request for the State Department to submit a statement of interest in the claims underlying this lawsuit, or a suggestion of immunity pertaining President Kagame. The Court concluded that because of the long-recognized primacy of the Executive Branch in matters involving suits against foreign heads of state, it should refrain from inquiring into the question of head of state immunity, as well as questions of diplomatic immunity and

---

examination of the Court's June 23, 2011 order makes clear that the plaintiffs' assertion is without merit.

justiciability, until the Executive Branch had a reasonable opportunity to register its interest in the case. Thus, in addition to granting additional time for the plaintiffs to serve President Kagame, the 120- day extension also provided additional time for the Executive Branch to make its position known.

On August 29, 2011, the United States submitted its Suggestion of Immunity (docket entry no. 49). It informed the Court that the Executive Branch of the United States Government has determined that President Kagame is immune from this suit. The plaintiffs were given time to respond to the United States' submission and on September 12, 2011, they filed their objection (docket entry no. 51). The Court has received no further submissions from the United States or from President Kagame.

The United States maintains that incident to the exclusive responsibility for foreign relations granted it by the Constitution, the Executive Branch has "sole authority to determine the immunity from suit of sitting heads of state."[2]  Suggestion of Immunity at ¶1. The United States asserts that the Executive Branch, upon "consideration of the relevant principles of customary international law, and in the implementation of its foreign policy and in the conduct of its international relations," has determined to recognize President Kagame's immunity from this suit while he is in office. Id. As the United States points out, such determinations by the Executive Branch have been found to be controlling and not subject to judicial review. See Ex Parte Republic of Peru, 318 U.S. 578, 589 (1943); Compañia Española de Navegacion Maritima, S.A. v. The Navemar, 303 U.S. 68, 74 (1938); see also Spacil v. Crowe, 489 F.2d 614, 617 (5th Cir.1974) ("The

---

[2]The Court takes exception to the United States' position that it has "sole" authority to determine the immunity of a sitting head of state. It is clear that "in the 'absence of recognition of the immunity by the Department of State," a district court has "authority to decide for itself whether all the requisites for such immunity existed." Samantar v. Yousuf, 130 S.Ct. 2278, 2284 (2010) (quoting Ex parte Republic of Peru, 303 U.S. 318 U.S. 578, 587 (1943); see also Compania Espanola de Navegacion Maritima, S.A. v. The Navemar, 303 U.S. 68, 74-75 (1938) (approving judicial inquiry into sovereign immunity when the Department of State declines to act); Heaney v. Government of Spain, 445 F.2d 501, 503  at n. 2 (2nd Cir. 1971) (evaluating sovereign immunity when the State Department had not responded to a request for its views).

precedents are overwhelming. For more than 160 years American courts have consistently applied the doctrine of sovereign immunity when requested to do so by the executive branch. Moreover, they have done so with no further review of the executive's determination."); Isbrandtsen Tankers, Inc. v. President of India, 446 F.2d 1198, 1201 (2d Cir.1971) ("The State Department is to make [an immunity determination] in light of the potential consequences to our own international position. Hence once the State Department has ruled in a matter of this nature, the judiciary will not interfere.").

In its June 23, 2011 order, the Court discussed the origins and general parameters of the head of state immunity doctrine. The Court noted that the United States Supreme Court's recognition of heads of foreign states as immune to suit in the U.S. courts dates back to Chief Justice John Marshall's opinion in The Schooner Exchange v. McFaddon, 7 Cranch 116, 11 U.S. 116 (1812). In McFaddon, the Court reasoned that although "the jurisdiction of the United States over persons and property within its territory 'is susceptible to no limitation not imposed by itself,' ... as a matter of comity, members of the international community had implicitly agreed to waive the exercise of jurisdiction over other sovereigns in certain classes of cases, such as those involving foreign ministers or the person of the sovereign." Republic of Austria v. Altmann, 541 U.S. 677, 688 (2004) (quoting McFaddon, 11 U.S. at 136).

In the wake of McFaddon, courts were "expected to 'defer[ ] to the decisions of the political branches – in particular, those of the Executive Branch – on whether to take jurisdiction over actions against foreign sovereigns and their instrumentalities.'" Ye v. Zemin, 383 F.3d 620, 624 (7th Cir. 2004) (quoting Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 486 (1983). Such deference to the Executive Branch is motivated by the caution due when the conduct of foreign affairs is involved. See Zemin at 626, citing Republic of Mexico v. Hoffman, 324 U.S. 30, 35 (1945) ("[I]t is a guiding principle in determining whether a court should [recognize asuggestion of immunity] in such cases, that the courts should not so act as to embarrass the executive arm in its conduct of

foreign affairs. 'In such cases the judicial department of this government follows the action of the political branch, and will not embarrass the latter by assuming an antagonistic jurisdiction.' ") (*quoting* United States v. Lee, 106 U.S. 196, 209 (1882)); Spacil at 619. It is motivated by respect for the separation of powers as well as the caution incumbent upon the judiciary when the conduct of foreign affairs is involved. Zemin at 626. "Separation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy." Spacil at 619.

McFaddon established a pattern of extreme deference to the Executive Branch, and for most of the ensuing 165 years the Executive Branch determined whether a foreign nation was entitled to immunity. Zemin at 624. Upon making the determination that a nation was entitled to immunity, the State Department provided a court with a "suggestion of immunity" and the court thereupon surrendered its jurisdiction and dismissed the claims against said foreign nation. Id.; see also Samantar v. Yousuf, 130 S.Ct. 2278, 2280 (2010). In 1952, in the face of increasingly important and complex international commerce, the State Department adopted the "restrictive" theory of sovereign immunity. This "restrictive" approach confined immunity to suits involving the foreign state's public acts, while permitting claims based on purely commercial acts to proceed. "Inconsistent application of sovereign immunity followed, leading to the FSIA, whose primary purposes are (1) to endorse and codify the restrictive theory, and (2) to transfer primary responsibility for deciding "claims of foreign states to immunity" from the State Department to the courts." Samantar at 2281 *citing* the Foreign Sovereign Immunity Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*

The FSIA now governs the determination whether a foreign state is entitled to sovereign immunity. It grants foreign states presumptive immunity while carving out exceptions for, among other things, purely commercial acts. As Samantar recently made plain, the FSIA does not address the immunity of foreign heads of state. Rather, such

officials may look to traditional immunities. Id. at 2290, fn. 15. Those immunities remain under the governance of the common law that had also pertained to foreign states prior to the enactment of the FSIA. Id. at 2285.

In accordance with the common law procedure set forth above, the Republic of Rwanda formally requested that Government of the United States proffer its suggestion President Kagame be held immune from this lawsuit. *See* Suggestion of Immunity at ¶2; *see also* Lafontant v. Aristide, 844 F.Supp. 128 (E.D.N.Y. 1994) (recognizing that a head of state may request a "suggestion of immunity" from the State Department). After receiving Rwanda's request, the Legal Adviser of the U.S. Department of State informed the Department of Justice that the "Department of State recognizes and allows the immunity of President Kagame as a sitting head of state from the jurisdiction of the United States District Court in this suit." *See* Suggestion of Immunity at ¶2, *citing* the letter from Harold Hongju Koh to Tony West, a copy of which is attached to the Suggestion of Immunity as Exhibit A.

Despite the United States' formal determination that President Kagame is immune from the plaintiffs' suit, and the considerable body of law establishing that deference be given that determination, the plaintiffs contend that this suit must not be dismissed. The plaintiffs' position appears to be based upon a misreading of Samantar and a misplaced reliance upon Clinton v. Jones, 520 U.S. 681 (1997), a case which is does not in any way address the issue of a foreign head of state's immunity from suit in the federal district courts.

The plaintiffs concede that in Samantar, the Supreme Court held that the FSIA applied only to foreign states and that suits against foreign officials continued under the governance of the common law. They proceed to confuse Samantar's discussion of the restrictive theory of foreign state immunity, which confined immunity to suits involving the *foreign sovereign's* public acts as opposed to its purely commercial acts, with the common law immunities afforded foreign heads of state who fall outside the FSIA's

provisions. In <u>Samantar</u>, the Court makes clear that the law that has developed with regard to foreign head of state immunity is unaffected by the FSIA. <u>Samantar</u> in no way undermines the common law procedure or tradition of deference to Executive Branch immunity determinations that traces to McFaddon. Samantar's discussion of the immunities afforded foreign officials who act in their official capacities is not pertinent here as President Kagame is not relying on immunity arising from the performance of official acts. Rather, he is relying on the immunity traditionally granted a sitting head of state recognized by the U. S. State Department. That immunity extends to unofficial acts undertaken prior to the head of state's assumption of office. As discussed above, it is grounded in a respect for the separation of powers and a determination that the courts should abstain from intrusion into matters that could trammel the Executive Branch's conduct of foreign policy.

It is true that separation of powers concerns also informed the Supreme Court's decision in <u>Clinton v. Jones</u>, 520 U.S. 681 (1997). There, however, the Court's separation of powers discussion illuminates the fundamental difference between the immunity claimed by President Clinton and the immunity traditionally granted heads of foreign states. The Court noted that from this country's inception, it was assumed that the president is subject to the laws of the nation. "[N]ot a single privilege is annexed to his character; far from being above the laws, he is amenable to them in his private character as a citizen, and in his pubic character by impeachment." <u>Clinton</u> at 696, *quoting* James Wilson's remarks at the Pennsylvania Constitutional Convention as set forth in 2 J.Elliot, <u>Debates on the Federal Constitution</u> 480 (2d ed. 1863) (emphasis deleted).

The Court rejected President Clinton's assertion that given the nature of his office, exercise of jurisdiction by the federal judiciary over his private conduct amounted to an impermissible interference with the Executive Branch. It observed that the separation of powers doctrine is focused on the allocation of official power among the three coequal branches of government. The judiciary, of course, is empowered by Article III to decide

cases and controversies. As the respondent was "merely asking the courts to exercise their core Article III jurisdiction," her case presented no threat to the separation of powers. Id. at 701. Whatever the outcome of the case, there was no possibility that the decision would curtail the scope of the official powers of the Executive Branch. "The litigation of questions that relate entirely to the unofficial conduct of the individual who happens to be the President poses no perceptible risk of misallocation of either judicial power or executive power." Id.

According to the plaintiffs' interpretation of Clinton, this Court's adjudication of claims relating to President Kagame's unofficial conduct occurring prior to his becoming a head of state poses no risk of intrusion upon the powers of the Executive Branch. The plaintiffs' interpretation is untenable. As Clinton makes clear, nothing in the U.S. Constitution exempts a sitting president from oversight of even his official actions. Indeed, our system of checks and balances depends upon the president being subject to the rule of law. No such concerns for executive accountability underlie the doctrine of foreign head of state immunity. When faced with a suit against a foreign head of state, a court must investigate whether said litigation potentially intrudes upon, or even usurps the Executive Branch's constitutionally-vested responsibility for conduct of diplomacy and foreign relations.

Clinton is simply inapplicable to the matter at hand. In that case, the Supreme Court concluded that the doctrine of separation of powers does not require federal courts to stay all private actions against a sitting President of the United States until he leaves office. Such a holding provides no guidance to the only issue before this Court, namely, whether the Court is bound by tradition and applicable authorities to defer to the United States' determination that President Kagame is immune from the plaintiffs' suit.

## Conclusion

Where the United States' Executive Branch has concluded that a foreign head of state is immune from suit, and where it has urged the Court to take recognition of that fact and to dismiss the suit pending against said head of state, the Court is bound to do so.

Accordingly, the Court:

1.  RECOGNIZES the United States' Suggestion that President Kagame is immune from the plaintiffs' suit;

2.  DEFERS to said suggestion of immunity;

3.  DEEMS the plaintiffs' motion for reconsideration to be moot; and

4.  ORDERS the plaintiffs' action DISMISSED.

ENTERED this 28th day of October, 2011.

**LEE R. WEST**
**UNITED STATES DISTRICT JUDGE**